FILED
SUPERIOR COURT
OF GUAM

2012 AUG -2 PM 3: 05

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **PEOPLE OF GUAM,** | ) CRIMINAL CASE NO. CF322-10 |
| Plaintiff, | ) |
| | ) |
| | ) **FINDINGS OF FACT AND** |
| | ) **CONCLUSIONS OF LAW** |
| vs. | ) **(Restitution)** |
| | ) |
| | ) |
| **PATRICK J. PANGELINAN,** | ) |
| Defendant. | ) |
| | ) |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on May 9, 2012, for a restitution hearing. Assistant Attorney General David Rivera represented the People of Guam ("the People"). Attorney Thomas J. Fisher appeared on behalf of Patrick J. Pangelinan ("Defendant"). Now, taking all evidence and arguments into consideration, the Court issues its findings and conclusions.

## FINDINGS OF FACT

By preponderance of the evidence, the Court makes the following findings of fact:

1. On May 21, 2010, Defendant was indicted on the charges of Vehicular Homicide (As a 2nd Degree Felony), Negligent Homicide (As a 3rd Degree Felony) with a Special Allegation: *Possession and Use of a Deadly Weapon in the Commission of a Felony*, Reckless Driving (As a

Petty Misdemeanor), Driving on the Right Side of the Roadway (As a Petty Misdemeanor), Driving on the Right-Hand Lane (As a Petty Misdemeanor). Indictment (May 21, 2010).

2. On October 25, 2011, the parties entered into a Plea Agreement under which the Defendant agreed to plead guilty to the lesser charge of Negligent Homicide (As a 3rd Degree Felony). The Plea Agreement stated the essential elements of the offense as follows: First: On or about May 4th, 2010 inclusive in Guam; Second: Defendant did cause the death of another human being, that is Jung Soon Kim; Third: the Defendant did so by criminal negligence. Plea Agreement at ¶ 3.

3. On October 25, 2011, the Court accepted Defendant's guilty plea to Negligent Homicide (As a 3rd Degree Felony). Accordingly, a Judgment was filed on November 15, 2011. The Judgment required the Defendant to pay restitution, if any, arising out of each charge in the complaint. Judgment at ¶ C.

4. On October 18, 2011, a restitution report was filed with the Court. The type of restitution requested by the People included the expenses incurred for Victim's hospital bills, burial costs, funeral costs and the travel expenses for family. The total value reported of expenses incurred was Forty One Thousand Seven Hundred Eighty Two dollars and Fifty Three cents ($41,782.53). Submission of Summary Report (Re: Restitution) at Attachment P.1.

5. A restitution hearing was held on May 9, 2012 before this Court where testimony was heard as to the amount of losses Victim and her family incurred.

6. The People admitted that there was an automobile insurance payout of $25,000.00 which was to be exempted from the restitution amount. Transcript JDAASCRA (5/9/2012) at 3:13:05. The People stated that Victim's family is asking for $41,782.53. Id. at 3:13:59.

7. The People stated a summary of the total expenses requested by Victim's family: medical bills- $13,359.40, funeral, burial, and crypt expenses- $6,720.31. Id. at 3:21:01. The People also wished to include in the restitution amount Victim's family expenses- $18,945.32. Id.

8. The Court asked the People on what grounds may this inclusion of travel expenses be based. Id. at 3:22:12. The People presented two precedent cases (State v. Spears, 184 Ariz. 277, 292, 908 P.2d 1062, 1077 (S. Ct. Ariz. 1996) and State v. Kenvin, 2011 Vt. 123, 2011 WL 5307388 (S. Ct. Vt. 2011)) which they relied upon to support a finding to include travel expenses. Id., at 3:22:28.

9. The People also noted that there was an automobile insurance payout of $25,000.00 from Defendant's insurance paid to the Victim's family. Id., at 3:13:06. The People asked for this payout amount of $25,000.00 to be excluded. Id., at 3:18:49. There is no information regarding what type of loss this insurance payment covers.

10. No witnesses testified at this restitution hearing.

## CONCLUSIONS OF LAW:

The People argue that the Victim has suffered a total loss of $41,782.53 which includes Victim's hospital bills, funeral expenses, burial expenses, and Victim's family's travel expenses to return to Guam.

The Defendant accepts the amounts requested by victims in this matter except for so much of the medical bills as exceed what the family of decedent has paid, and except for one-half of the claimed burial expenses and except for all travel expenses claimed by the family. Defendant objects to any amount of restitution that exceeds $5,000.00 pursuant to 9 GCA §80.50.

Restitution is authorized pursuant to 9 G.C.A. § 80.50 (2005) and 9 G.C.A. § 80.53. A defendant may be ordered to pay restitution for losses[1] to the victim so long as the restitution does not exceed the victim's loss resulting from the offense. Id. The losses evaluated for purposes of restitution should be losses caused by the conduct constituting the offense by the offender. Id. The guiding principle of restitution is to make the victim whole to the extent permitted by the statutory and constitutional scheme. In re Andrew C., 215 Ariz. 366, 367, ¶ 10, 160 P.3d 687, 689 (App.2007). Restitution is necessary because it would act as a deterrent and a correcting influence on the defendant. See 9 G.C.A. §80.52 (b)(2). Furthermore, the Defendant through his Plea Agreement, voluntarily agreed that he would pay restitution. Plea Agreement at ¶ C.

The conviction here is of a third degree felony which would ordinarily limit the order of restitution to $5,000.00 set by 9 G.C.A. §80.50 (b). However, restitution awards in excess of $5,000.00 are allowed under section 80.50 (e) but are limited up to double the amount equal to the loss to the victim. People v. Mallo, 2008 Guam 23 ¶ 41. Section 80.50(e) allows for a higher amount when there is a finding of loss to the victim that is higher than that. Id. at ¶ 43.

In calculating the amount owed in restitution, the court needs only a reasonable determination of appropriate restitution. U.S. v. Kearney, 672 F.3d 81(1st Cir. 2012). Trial courts may use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole. People v. Goulart., 273 Cal. Rptr. 477, 483 (Cal. App. 4 Dist. 1990).

Here, the reported losses the parties present for inclusion in the restitution order include the victim's hospital bills, burial fees, funeral expenses, and Victim's family's travel expenses. The hospital bills, burial expenses and funeral expenses would all be proper items for restitution here. The victim's family travel expenses will not be included in the restitution amount.

---

[1] The term "loss" means the amount of value separated from the victim. 9 GCA §80.50(e).

When read plainly, 9 GCA 80.50 can be interpreted as governing restitution to the extent of losses incurred by Victim caused by the conduct constituting the offense which Defendant is convicted.[2] "A person who has been convicted of an offense may be sentenced to pay a fine or to make restitution not exceeding…Any higher amount equal to double the…loss to the victim caused by the conduct constituting the offense by the offender." Id.

A plain deconstruction shows that a person convicted of an offense must pay restitution to a victim. The amount the convicted person must pay is the amount of losses caused by the conduct constituting the offense. The offense referred to in "conduct constituting the offense" can only be referring to the "offense" which a person is convicted of in the beginning of this statute.

There also must be a direct link between the loss for which restitution was ordered and the conduct for which defendant was convicted. State v. Kenvin, 2011 VT 123, ¶ 11 (Vt. Supreme Court 2011). The losses which victims can recover for must be the direct results of a defendant's crime. Id. at ¶ 13.

In line with this plain reading of the statute above, Defendant should only be responsible for those losses directly caused by his convicted conduct, i.e. Negligent Homicide. Negligent Homicide according to 9 GCA §16.20 (a)(5) reads as follows: a person is guilty of criminal homicide if he causes the death of another human being by criminal negligence.[3] Breaking down the convicted charge into two main parts, the legislative intent of holding someone responsible for acting with the intent of "criminal negligence" could have been to prevent a realm of possible

---

[2] It is a cardinal rule of statutory construction that courts must look first to the language of the statute itself…Absent clear legislative intent to the contrary, the plain meaning prevails. Sumitomo Const., Ltd. V. Government of Guam 2001 WL 1360135 Guam Terr., 2001
[3] Criminal negligence means when a person acts with respect to attendant circumstances or the result of his conduct when he should be aware of a substantial and unjustifiable risk that the circumstances exist or that his conduct will cause the result and his failure to be aware of the risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

dangers present with such conduct, e.g. driving into pedestrians or other cars, hurting pedestrians, killing pedestrians, driving into property, hurting the driver or passengers in the same car, etc. The homicide part of Defendant's conviction would obviously be to hold members of society responsible not to cause the death of another human being.

Indeed a possible danger of Defendant's negligent activity came to fruition where he hit Victim with his vehicle causing her to die from her severe injuries. As a direct result of his negligent driving, Victim required treatment at a hospital for her injuries. Hospital bills would be incurred from such treatment. Because his conduct caused such severe injuries, the Victim died as a result; per Victim's respective beliefs and as a natural consequence of death, she incurred expenses for her burial and funeral. As direct consequences of Defendant's Negligent Homicide, Victim incurred losses in the form of hospital bills, burial fees and funeral expenses, all of which will be included in the restitution amount.

However, the family's travel expenses were not direct consequences of Defendant's convicted conduct here. The restitution ordered may only cover those consequences with a direct nexus to Defendant's offense of Negligent Homicide. The fact that Defendant was negligent in his conduct and caused Victim's death did not inescapably compel the Victim's family from traveling to Guam.

While there has been an allowance of travel expenses covered by restitution in other jurisdictions, those cases showed that the family had to travel to attend trial or close the decedent's affairs or estate.[4] There is no evidence showing at least one person had to return to take care of the Victim's affairs. Furthermore, the expenses are classified on the record as travel

---

[4] The People rely on State v. Spears, 84 Ariz. 277, 292, 908 P.2d 1062, 1077 (S. Ct. Ariz. 1996) as a precedent for allowing restitution to cover family travel expenses. The Court in Spears relied upon a precedent case allowing for travel expenses where it was shown that the daughter of a deceased victim had to travel to close matters of the deceased's affairs or estate. By the same token, the court in Spears reasoned that the expenses incurred for traveling were for the purpose of closing the decedent's estate. The facts in this case are distinguishable from Spears where no evidence is presented of the necessity of a family member to return to handle matters of the Victim's estate.

expenses to attend Victim's funeral in Guam. People's Response to Defendant's Statement in Re Restitution, at P. 5 (March 13, 2012). Such a purpose would not be a direct result of Defendant's conduct. In addition, it would be unreasonable to require Defendant to pay for every person's airline expense if such a purpose existed. It is unreasonable to expect that the closure of an estate would require a total of seven people—including a grandchild and fiancé of Victim's children. While certainly a catalyst of events compelling their flight expenses, Defendant's convicted conduct here is not a direct cause of the Victim's family's airline expenses. Therefore, restitution will not be granted for this amount.

In light of the above, Defendant will be ordered to make restitution for Victim's hospital bills, burial expenses, and funeral expenses. The Victim's family's airline expenses to attend Victim's funeral will not be included in the restitution amount. Where the Victim's medical bills cost $13,359.40 and the funeral, burial, and crypt expenses cost $6,720.31, Defendant must pay a total of $20,079.71.

While the Victim received $25,000.00 from Defendant in the form of an automobile insurance payout, this payment will not be used to offset the amount which Defendant is responsible for in this restitution order. This insurance payment goes over the restitution amount here but it will not be used to pay Defendant's restitution. As mentioned above, in addition to making the victim whole, the purpose of imposing restitution is a criminal deterrence or to act as a criminal sanction for the criminal conduct for which a person is convicted. Each purpose of restitution will be given equal consideration here and as such, Defendant's insurance payment will not be used to offset his restitution responsibility. If Defendant were allowed to use this insurance payment towards his restitution, he would not have to pay anything else towards restitution.

In <u>U.S. v. Crawford</u>, an insurance payment by Defendant's insurance to the Victim for losses was not allowed to be used as an offset for the restitution ordered for the victim's losses. Defendant in that case pleaded guilty to involuntary manslaughter. The court there cited 18 U.S.C. §3664 (j)(2) where an offset could be applicable only where there is compensation for the same type of loss. 169 F.3d 590 (C.A.9 (Ariz.),1999). The losses which the insurance in that case were meant to cover were different from the losses covered in the restitution order. Consequently, the purpose of restitution was stated earlier to be a criminal sanction and deterrent on the Defendant in addition to making the victim whole. The deterrent purpose of restitution would not be served here if Defendant benefits from such a windfall payment. Therefore, the insurance payment of $25,000.00 will not be used to offset the restitution amount ordered above.

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Court ORDERS the Defendant to pay restitution in the amount of Twenty Thousand Seventy-Nine dollars and Seventy-One cents ($20,079.71) to the family of Jun Soon Kim for losses incurred as a result of Defendant's offense.

A progress hearing is set for <u>September 10, 2012 at 9 a.m.</u>

**SO ORDERED** this ___ ℤ ___ day of <u>August</u>, 2012.

HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
Clerk of the Superior Court of Guam

AUG 0 2 2012